### REES v. STATE. (No. 8960.)

(Court of Criminal Appeals of Texas. Oct 7, 1925. State's Rehearing Denied Jan. 13, 1926.)

I. Criminal law ⊂⊃857(3)—Jury's discussion of defendant's failure to testify held ground for new trial.

Discussion by jury before verdict of defendant's failure to testify was ground for new trial, even though only one juror said he was influenced by it; presumption of injury not being rebutted by conclusion of juror that he was not influenced.

On Motion for Rehearing.

2. Criminal law ⊂⊃364(4), 365(1)—Ownership of other liquor, and statements after arrest, held part of res gestæ, in prosecution for transporting liquor.

Where defendant, charged with transporting intoxicating liquor, was carrying liquor when arrested, and sheriff took him 125 feet to locker, which contained 104 bottles of whisky, and to which he had key, acts and words of defendant following arrest, and his ownership of whisky near by, were part of res gestæ.

3. Intoxicating liquors ⊂⊃226—Ownership of other liquor, and statements after arrest, admissible to prove corpus delicti, in prosecution for transporting liquor.

Where defendant, charged with transporting intoxicating liquor, was carrying liquor when arrested, and 104 bottles of whisky were found in locker, to which ·he had key, acts and words of defendant following arrest, and his ownership of such whisky, *held* admissible to prove corpus delicti.

Commissioners' Decision.

Appeal from District Court, Bee County; T. M. Cox, Judge.

Errol Rees was convicted of transporting intoxicating liquor, and he appeals. Reversed and remanded.

B. D. Tarlton and W. M. Sutherland, both of Corpus Christi, for appellant.

Sid B. Malone, Dist. Atty., of Beeville, and Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

BAKER, J. Appellant was convicted in the district court of Bee county for transporting intoxicating liquor, and his punishment assessed at one year in the penitentiary. Complaint is made to the court's charge on transportation. We see no error on this phase of the case and no harm shown to defendant under article 743, C. C. P.

Appellant complains of the action of the court in permitting Sheriff Malone to testify, after stating that he overtook defendant near the fair ground, and did not intend to let him leave there if he could help it, and, after he had taken the bottle from him, he told him to "let's go back to the hangar," and, when they started back to the south end of the hangar, the defendant said, "Chief, you are going to ruin me; just think about my folks. My goodness, what in the world will I do? Ain't there some way we can stop this or quash it?" And he told him he was talking to the wrong fellow; that when they reached the south end of the hangar the sheriff asked, "What have we got?" and asked for his (defendant's) keys, and that the defendant slapped his hand away, and he told him not to do that, to give him those keys; and he slapped his hand away again, and then he (sheriff) poked defendant right in the breast or stomach with his gun, and he dropped the keys, and, upon unlocking the hangar and another door, he found a quantity of bottles of whisky, which defendant begged him to let him break, and said he would break every bit of it before his eyes. This testimony was objected to because defendant was under arrest at the time said statements were made. The court admitted same, he states, upon the ground that it was res gestæ. The record shows the state was relying upon a conviction by reason of taking a bottle of whisky off of defendant's person prior thereto. The qualification to the bill states it was about seven minutes from the time the sheriff first saw him (defendant) until the last statement was made. We fail to see how the statements made by defendant at the time of the finding of the whisky in the hangar and the conduct of defendant and the sheriff, and statements of both relative to obtaining the keys and breaking the whisky, as set out in said bill, throw any light on the alleged transportation of the bottle taken off of his person, and, further, do not believe that this testimony comes under the head of res gestæ, and that same should not have been admitted. Under a charge of having whisky in his possession for sale, it might be permissible as a circumstance to show

the finding of this whisky as bearing on the intent of defendant, but his statements as above set out, as well as the testimony of the witness Wright to the same effect, was not admissible. Stanchel v. State, 89 Tex. Cr. R. 358, 231 S. W. 120, and Walton v. State, 41 Tex. Cr. R. 454, 55 S. W. 566.

But as the case will be reversed on another point, it is unnecessary to discuss this matter further.

[1] Appellant also complains of the action of the jury in discussing, while considering their verdict, the failure of the defendant to testify upon the trial. Three of the jurors made affidavits that, after they retired and before reaching a verdict, it was argued by members of the jury to the effect that, if the defendant was not guilty, why didn't he go on the stand and swear that he did not do it; that, if they were on trial and not guilty, they would take the stand and deny the charge. One of the affiants stated at least seven or more of the jury argued that. The state placed all the jurors upon the witness stand, and the most of them testified that it was discussed or mentioned after the first ballot was taken, and they stood ten to two for conviction, and they remained that way until the following day, and the others said they did not hear it, but would not say it did not occur. In fact, there was no denial of it. The juror Marlin testified that he made the statement that he personally felt like if he was on trial and pleaded not guilty, that he would swear to it until he died; that he would contend for it that way. All of the jurors, except one on the stand, testified that the argument made and the failure of the defendant to testify did not influence their verdict. One of the jurors testified the argument influenced him. It was conclusively shown these statements were made before a verdict was reached, and after the jury stood ten to two for conviction. We are of the opinion that the conduct of the jury comes clearly within the prohibited rule. Branch's P. C. § 569, pp. 292, 293. Hennington v. State, 100 Tex. Cr. R. 78, 271 S. W. 624. We think the above authorities clearly hold that the conduct of the jury in this case was reversible error and the court should have granted a new trial. There are other errors complained of in the record, but we do not deem it necessary to pass upon same at this time.

For the reasons above stated, the judgment of the trial court is reversed and remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

### On Motion for Rehearing.

MORROW, P. J. [2, 3] According to the testimony of Malone, the sheriff, he observed an automobile traveling in the direction of the fair grounds. The car was followed by the witness to a point near the fair grounds, where it was parked. The sheriff parked his car at a different place, and went into the fair grounds with his companion, Wright; they taking different courses. The sheriff met the appellant and his brother, Carl Rees, traveling on foot. Upon calling to them, Carl Rees dropped a bottle. Appellant was in possession of a bottle of whisky. The sheriff reached for it, and said, "Let me have that, Errol." Appellant slapped the sheriff's hand, pulled a bottle out of his pocket and dropped it. The sheriff picked it up, and said, "Come on, boys." He conducted them in the direction of a hangar to a horse stall about 125 feet distant; this being the point from which the sheriff had observed the appellant and his companion walking. Inside of the hangar there was discovered a locker, which, with the key taken from the appellant, the sheriff unlocked, and found therein 104 bottles of whisky, some of which were in sacks and others on a table. Some labels were also found in the locker. While the parties were walking from the place where the appellant was first apprehended to the hangar, according to the sheriff, the appellant said:

"Chief, you are going to ruin me. * * * Ain't there some way that we can stop this or quash it?"

The sheriff replied:

"Errol, you are talking to the wrong fellow. * * * Let me have those keys."

Appellant slapped the sheriff's hand away, when the sheriff put his pistol against the appellant's breast and demanded the keys, which were surrendered.

In proving the corpus delicti, the law would not confine the state to the proof alone of the fact that the appellant was found walking on the fair grounds with a bottle of whisky in his possession. It was competent for the state to prove the res gestæ, which would include not only the fact that the appellant had a bottle of whisky on his person, but that he had a quantity of whisky near by, and such circumstances as were indicative of the intent of the appellant in carrying the bottle of whisky which was in his possession. It is believed that the res gestæ would include the acts and words of the appellant coincident with his arrest, and which were illustrative of his intent. If, for instance, upon his apprehension, or within a few moments thereafter, he had said that the whisky in his possession was intended merely for medicinal use, or that he did not intend to remove it, but merely to drink it upon the spot, or had made any other declarations explanatory of his act consistent with his innocence, the rules of evidence demand that it should not be excluded from the jury. Illustrative is the case of Copeland v. State, 94 Tex. Cr. R. 112, 249 S. W. 495, where, at the home of Drew Copeland there was found

a distillery in operation. Drew Copeland and Stanley Copeland were placed under arrest. Drew Copeland claimed the ownership of the apparatus, and said that Stanley was not connected with the unlawful act. Upon the trial of Stanley Copeland, this declaration of Drew Copeland was excluded by the trial court, and because of its ruling the case was reversed. In support of its decision, this court cited Weathersby v. State, 29 Tex. App. 278, 15 S. W. 823; Jeffries v. State, 9 Tex. App. 603, and numerous other cases which are found collated in the opinion. Courts in other jurisdictions and text-writers announce this principle. See Underhill's Crim. Ev. (3d Ed.) p. 225, § 166. There are numerous instances in which this court has applied this rule in favor of the accused. A like announcement, deduced from the opinions of this court, is made by Mr. Branch in his Ann. Tex. P. C. §§ 84 to 89, and finds sanction in many recent cases of this court. Among them are Belson v. State, 97 Texas Cr. R. 44, 260 S. W. 197; Foster v. State, 276 S. W. 928; and precedents therein cited. The same rule is applicable in behalf of the state. See Copeland v. State, 94 Tex. Cr. R. 168, 249 S. W. 1049; Stanton v. State, 94 Tex. Cr. R. 367, 252 S. W. 519; Boortz v. State, 95 Tex. Cr. R. 480, 255 S. W. 434; Rayburn v. State, 95 Tex. Cr. R. 555, 255 S. W. 436; Lovelady v. State, 95 Tex. Cr. R. 571, 255 S. W. 415; Coburn v. State, 96 Tex. Cr. R. 26, 255 S. W. 613; Givens v. State, 98 Tex. Cr. R. 652, 267 S. W. 725; Goforth v. State, 100 Tex. Cr. R. 442, 273 S. W 845. Under these precedents, we are of the opinion that the acts and declarations of the appellant of the receipt of which complaint is made were not improperly received. They were acts and declarations practically coincident with the arrest, explanatory of the conduct of the accused, and, though inculpatory, were, in our opinion, admissible in evidence. This conclusion we have reached upon a re-examination of the record in the light of the motion for rehearing prepared by the state.

In the criticism of the opinion of the court, state's counsel insists that, inasmuch as most of the jurors testified that they were not influenced by the comment upon the appellant's failure to testify in his own behalf, a reversal upon that ground was not warranted. We take occasion to reiterate that which has often been said before; namely, that where a mandatory provision of the statute, such as the comment upon the failure of the accused to testify, is made in the jury room, or new and material evidence against the accused is received, the presumption of injury is not to be rebutted by the conclusion of the juror that he was not influenced. When improper evidence is received during the trial, or illegal comment made by the court or counsel, it has never been thought competent to inquire into its effect by calling upon the jurors to testify that their verdict was or was not influenced by these improper proceedings. When such violations of the statute take place in the retirement of the jury, for a stronger reason, this principle would apply. The announcements of this court to that effect have been frequent and of long standing. See Mitchell v. State, 36 Tex. Cr. R. 278, 33 S. W. 367, 36 S. W. 456; McDougal v. State. 81 Tex. Cr. R. 187, 194 S. W. 944, L. R. A. 1917E, 930, and precedents there cited; also Clements v. State, 69 Tex. Cr. R. 371, 153 S. W. 1137.

A motion to set aside the indictment, in all essential particulars like that before the court in the case of Juarez v. State (Tex. Cr. App.) 277 S. W. 1091 (No. 8959) not yet (officially) reported, was made and overruled. We held in that case that the plea, if true, should have been sustained, and the court was in error in refusing to hear evidence upon it.

With the comments and modifications of the original opinion here made, the motion for rehearing is overruled.